IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DON MICHAEL SKELTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:06cv195-WKW |
| ) | |
| BILLY WAYNE FULMER, ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

## SPECIAL REPORT

**COME NOW** the Defendants, Sheriff Billy Wayne Fulmer, Shane Lockhart and Derrick Bone, and respectfully submit their Special Report pursuant to this Court's Order of April 10, 2006.

I.   Introduction

The Plaintiff is currently serving his sentence at Ventress Correctional Facility. Before being transferred to the state prison system, the Plaintiff filed a Complaint while incarcerated at the Chilton County Jail claiming poor prison conditions at the jail.

The Plaintiff initially demanded that he be released from the Chilton County Jail. His Amended Complaint demands that the "Authorized Official of the jail to have to pay a fine of $1200.00 a day for each inmate over the capacity." The Plaintiff also demands "Chilton County to pay these [medical] expenses" and for keeping him as a state inmate over one year.

II.   The Parties

a.   The Plaintiff, Don Michael Skelton, is a convicted felon currently confined at the Ventress Correctional Facility. The Plaintiff was incarcerated in the Chilton County Jail

from August 12, 2004 to March 3, 2006 when he was transferred to the State Department of Corrections.

    b.    The Defendant, Billy Wayne Fulmer, is the Sheriff of Chilton County, Alabama.

    c.    The Defendant, Shane Lockhart, is the Warden of the Chilton County Jail, employed by Sheriff Fulmer.

    d.    The Defendant, Derrick Bone, is a Sergeant at the Chilton County Jail, employed by Sheriff Fulmer.

III.    Plaintiff's Allegations and Defendants' Response

The Plaintiff alleges that while incarcerated in the overcrowded Chilton County Jail he was denied placement in favorable programs, not allowed adequate exercise time, denied free postage, refused clean utensils, placed in lockup and denied acess to a law library.

IV.    Facts:

The Plaintiff was arrested on August 4, 2004 on a charge of criminal mischief. Attached to the Affidavit of Shane Lockhart is a copy of the Incident Report and the disposition of that charge. The Plaintiff was bonded out on August 4, 2004 and then rearrested on August 12, 2004 for parole violation. He was and is a convicted felon. (See Affidavit of Shane Lockhart).

The Plaintiff was a state prisoner confined in the Chilton County Jail awaiting transfer to the State Department of Corrections at the time that he brought this action. The State Department of Corrections did not have the space to take the Plaintiff until March of 2006. (See Affidavit of Shane Lockhart).

The Plaintiff was transferred from the Chilton County Jail to the Alabama Department of Corrections on March 3, 2006. The Plaintiff is no longer confined at the Chilton County Jail. (See Affidavit of Shane Lockhart).

Posted in each Pod at the Chilton County Jail are Inmate Rules and Regulations. Please see photograph of the Inmate Rules and Regulations which were posted in the "D-Pod" where the Plaintiff was confined. (See attached photographs to Affidavit of Billy Fulmer).

Under the title "Grievance" of each posted Inmate Rules and Regulations is the following:

> "All inmates are entitled to voice any grievance to the Jail Administration. It should be put in writing on the Inmate Request Form and given to jail personnel. Prompt and fair consideration will be given to each request and appropriate action will be taken when warranted." (See Affidavit of Shane Lockhart).

There were only two formal Inmate Requests Forms filed by the Plaintiff while he was confined at the Chilton County Jail. The two formal grievances had nothing to do with the claims listed in the Complaint filed in this action. Attached hereto as Exhibit "A" is the inmate file for the Plaintiff and the only two formal grievances filed by the Plaintiff. (See attached photographs to Affidavit of Billy Fulmer).

When an inmate is received at the Chilton County Jail they are provided with a hygiene kit. Inmates are also allowed to purchase items for their personal hygiene through the canteen. On every Inmate Request Form there is a block to check if they have a hygiene request and do not have sufficient funds in their account to pay for the needed items. Attached hereto are the Individual Account Report for the General Account (Exhibit "B") and Commissary Lists (Exhibit "C") showing the Plaintiff's funds available for use in purchasing on his Commissary Account

3

Commissary items including, but not limited to, hygiene items. (See Affidavit of Shane Lockhart).

Tabbed as Exhibit 1 to Exhibit "C" for the Court's convenience is a sheet from the Plaintiff's Commissary List reflecting an informal grievance. The Plaintiff on January 19, 2005, made note that he was due $2.00 on his commissary account because he did not receive 5 oatmeal cookies. Also tabbed from the Plaintiff's Commissary List is the Plaintiff's response at the bottom of his Commissary List dated January 26, 2005 acknowledging that the jail staff corrected the balance on his Commissary account based upon his request to the jail staff. (See Affidavit of Shane Lockhart, Exhibit 2 to Exhibit "C").

While serving as a Jail Trustee the Plaintiff stole hygiene kits from the jail laundry room. Sgt. Derrick Bone discovered that the Plaintiff was rolling up hygiene kits in the laundry and distributing the hygiene kits to inmates in exchange for barter. An investigation was performed of the Plaintiff's allegation that he was following the direct order of Officer Cleckler. Officer Cleckler denied giving any order for the Plaintiff to steal hygiene kits and barter them. The Plaintiff was refused further Trustee status and placed in a segregated cell due to his theft of property. He was not placed in a "hole." (See Affidavit of Derrick Bone and Affidavit of Shane Lockhart).

Shane Lockhart also investigated the Plaintiff's claim that Ms. Haygood told him he would be on work release status. Ms. Haygood denied making any such statement to the Plaintiff. If Ms Haygood had told the Plaintiff that he would be placed on work release status, he would have been denied trustee status because he stole hygiene kits. (Affidavit of Shane Lockhart).

Inmates are assigned one uniform and that uniform is washed once a week. While the uniform is being washed the inmate is required to remain in his cell in his underwear until the

4

uniform has been washed and dried. There is no law library at the Chilton County Jail. Inmates do have access to their court-appointed attorney and inmates are allowed to communicate with their attorneys. An inmate may submit an Inmate Request Form to see an attorney and inmates are allowed telephone calls to their attorneys. They also have available postage prepaid envelopes to communicate with their attorneys. Pre-stamped envelopes are provided to inmates at a cost of .50¢. The stamp costs .39¢ and the envelope which is pre-stamped makes up the balance. (Affidavit of Shane Lockhart).

No AA, N/A nor educational classes are provided at the Chilton County Jail. At one time classes were available, but were not attended by the inmates. Inmates are allowed to shave once a week, the day before visitation. They are assigned a brand new safety razor, which is retrieved after each use for security reasons. (See Affidavit of Shane Lockhart).

The Chilton County Jail is inspected annually by the State Department of Public Health. The jail is also inspected by the State Department of Corrections. Attached hereto is a copy of the latest Report from the State Health Department as well as the latest Report by the State Department of Corrections. Twice a year the Chilton County Grand Jury inspects the county jail. Attached hereto are the Chilton County Grand Jury Reports for the years 2004, 2005, and 2006. There have never been any complaints by the State Health Department, State Department of Corrections, or Chilton County Grand Jury.  (See Affidavit of Shane Lockhart).

The inmate capacity at the Chilton County Jail is 174. There have been times when the jail has been in excess of its capacity and mats, sheets and blankets are provided to inmates for them to sleep on the floor. The State Department of Corrections advises the Chilton County Jail when they have available space in the state prison system for transfer of State Prisoners such as the Plaintiff. (See Affidavit of Billy Fulmer).

Inmates are allowed outside based upon availability of the staff and the weather conditions. Attached hereto is a photograph which fairly and accurately depicts the Pod where the Plaintiff was assigned. Plastic eating utensils are used and there have never been any complaints that the utensils are not clean. For inmate protection, the water in the individual cells is not hot enough to sterilize utensils. (See Affidavit of Shane Lockhart).

V.      Analysis of Applicable Law

The Prison Litigation Reform Act ("PLRA") requires that any prisoner seeking to bring a lawsuit about prison life must first exhaust all of his or her administrative remedies. 42 U.S.C. § 1997e(a). See *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Plaintiff on two occasions filed formal Inmate Request Forms. In addition, the Plaintiff exercised his right to assert complaints when he learned that his Commissary Account was not properly credited when he did not receive five oatmeal cookies. Once this problem was presented by the Plaintiff, his account was corrected. At no time did the Plaintiff seek to redress any grievance of which he now claims. (See Affidavits of Billy Fulmer and Shane Lockhart).

A prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. See *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Constitution itself does not confer any right upon an inmate to any particular custody or security classification); *Meachum v. Fano*, 427 U.S. 215, 255 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460 (1983). Because Skelton has no constitutional right to a specific classification and/or security status, Correctional Officials should be allowed to change a prisoner's classification for theft of jail property. An investigation of the incident was performed by Warden Lockhart and

6

Sgt. Bone. The decision to change Skelton's classification from Trustee because he was stealing hygiene kits from the jail laundry did not violate his constitutional rights. Skelton's allegations fail to assert a deprivation of any constitutionally protected liberty interest.

The 11th Circuit has noted that "the constitution does not require prisons to be comfortable." Jordan v. Doe, 38 F.3d 1559, 1564 (11th Cir. 1994). The Defendants dispute the Plaintiffs' allegations with respect to the conditions at the Chilton County Jail, but even if the allegations are true, jail conditions similar to those complained of in this case have been adjudicated by the 11th Circuit as constitutional. See Id. (holding that prison conditions including over population, inmates sleeping on tables and floors, unsanitary floors and linens, food containing foreign objects, and denial of medical attention are constitutional).

The 11th Circuit noted that prison conditions are scrutinized under the 8th Amendment. Id. at 1564. This type of claim has a two prong analysis: "(1) an objective component which requires that conditions be serious, and (2) a subjective component that requires that prison officials exhibit deliberate indifference to prisoner health or safety." Id. (internal quotations omitted).

The 11th Circuit has held "[a]bsent a court ruling, we would expect a reasonable government official to *know* that official conditions of confinement are clearly unconstitutional only in a truly extreme case." Id. at 1567 (emphasis added). The conditions at the Chilton County Jail are not an extreme case, especially in light of the fact that similarly alleged conditions have been adjudicated as constitutional. See generally Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994). The Chilton County Jail has been regularly inspected by the State Department of Corrections, the State of Alabama Department of Public Health and the various Grand Juries

serving in Chilton County. The jail has received positive results. (See Affidavit of Shane Lockhart).

The Plaintiff in his Amended Complaint (page 2 of Doc. No. 14) alleges "I will probably be back in the Chilton County Jail." The issues raised in this case as to conditions at the Chilton County Jail are moot because Plaintiff is not presently incarcerated in the Chilton County Jail. "The general rule is that a prisoner's transfer or release from a jail moots his individual claims for declaratory or injunctive relief." McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984).

The 11th Circuit has held "the mootness doctrine usually requires a court to dismiss an action in which, because of events occurring after the Plaintiff filed the suit, any relief the court might grant would be of no utility to the Plaintiff." Tucker v. Phyfer, 819 F.2d 1030, 1034 n.3 (11th Cir. 1987). Thus any grievance the Plaintiff has regarding conditions at the Chilton County Jail, at which he is no longer incarcerated, should not be redressed by an action in this Court.

Furthermore, the 11th Circuit has said "[p]ast exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury, or real and immediate threat of repeated injury." Dudley v. Stewart, 724 F.2d 1493, 1494 (11th Cir. 1984). The 11th Circuit and the United States Supreme Court have said that the potential for the Plaintiff to again be subjected to the conduct complained of is "too speculative to create an actual controversy sufficient for declaratory judgment to be entered." Id. See also, City of Los Angeles v. Lyons, 461 U.S. 95 (1983). Because the Plaintiff is no longer incarcerated at the Chilton County Jail, he does not have standing to request declaratory or injunctive relief against the Chilton County Jail. See, Cotteral v. Paul, 755 F.2d 777 (11th Cir. 1985); Dudley v. Stewart, 724 F.2d 1493 (11th Cir. 1984); McKinnon v. Talladega

County, Ala., 745 F.2d 1360 (11th Cir. 1984); (all holding that once a prisoner has been released from a jail his claim for injunctive relief regarding prison conditions is mooted).

Although Chilton County has not been specially added as a Defendant, the Pliantiff does ask that the County pay him money. The County is not liable for claims arising out of the operation of prisons. The 11th Circuit has held "the duties of the Counties with respect to the jail are limited to funding the operation of the jail and to providing facilities to house the jail." Turquitt v. Jefferson County, 137 F.3d 1285, 1289 (11th Cir. 1998) (internal quotations omitted) (citing Starke v. Madison County, 678 So.2d 787 (Ala. Civ. App. 1996)). The 11th Circuit further noted that "the County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area." Turquitt, 137 F.3d at 1291. Furthermore, the 11th Circuit has stated that "a local government can only be liable under § 1983 for injuries for which the government itself caused, and causation necessarily implies control." Turquitt, 137 F.3d at 1292. Therefore, Chilton County cannot be held liable for any claims brought against it by Plaintiff.

    VI.    Immunity

The Plaintiff has not specified whether this suit is brought against the Defendants in their official capacity, individual capacity, or both. Because Defendants are entitled to immunity in both their official and individual capacities, this analysis addresses Defendants' immunity in both capacities.

    a.    Qualified Good Faith Immunity

The 11th Circuit has taken note of the United States Supreme Court test for qualified immunity. Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994). The United State Supreme Court has held that "government officials performing discretionary function are generally

9

shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Jordan, 38 F.3d at 1565 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). See also Lancaster v. Monroe County, Ala., 116 F.3d 1219 (11th Cir. 1997). Discretionary authority means "all actions of the government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan, 38 F.3d at 1566 (internal quotations omitted) (citing Rich v. Dollar, 841 F.2d at 1558, 1564 (11th Cir. 1988)). Noting the breadth of qualified immunity, the 11th Circuit has stated that "protection of qualified immunity extends to all but the plainly incompetent or those who knowingly violate the law." Jordan, 38 F.3d at 1565 (internal quotations omitted) (citing Malley v. Briggs, 475 U.S. 335 (1986)).

The 11th Circuit has held that in order for a Plaintiff to prevail against jailers in their individual capacities, he must "show that they were personally involved in acts or omissions that resulted in the constitutional deprivation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). There is no allegation, nor could there be that Sheriff Fulmer, Shane Lockhart, or Derrick Bone were personally involved in depriving the Plaintiff of any clearly established constitutional right. Additionally, the 11th Circuit has noted that the United States Supreme Court has held that "public officials whose positions entail the exercise of discretion enjoy qualified immunity from personal liability in Section 1983 actions" Ziegler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

The 11th Circuit went on to establish a two-step test for applying qualified immunity. Id. First, the "defendant must show that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. Second, "the burden shifts to the Plaintiff to

show lack of good faith." Id. The defendants were acting within their discretionary authority at all material times with respect to operation and management of the Chilton County Jail. Defendants performed their functions with the good faith belief that conditions at the Chilton County Jail were constitutional.

        b.      11th Amendment Immunity

It is well established in Alabama that sheriffs act as State Officials. See Turquitt v. Jefferson County, 137 F.3d 1285, 1289 (11th Cir. 1998). See also, Parker v. Amerson, 519 So.2d 442 (Ala. 1987). Under Alabama law, "the Sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself. Turquitt, 137 F.3d at 1289. The 11th Circuit has noted that "Congress has not abrogated 11th Amendment immunity in § 1983 cases." Carr v. City of Florence, Ala., 916 F.2d 1521 (11th Cir. 1990). The Court further noted that Article 1, § 14 of the Alabama Constitution of 1901 expressly states that "the State of Alabama shall never be made a Defendant in any court of law or equity." Id., (citing Ala. Const. Art. 1, § 14 (1901)). The 11th Circuit has also "held that the 11th Amendment barred a § 1983 lawsuit against an Alabama Sheriff in his official capacity." Carr v. City of Florence, Ala., 916 F.2d at 1525 (citing Parker v. Williams, 862 F.2d 1471 (11th Cir. 1989)). The Court went on to hold that "the Sheriff's 11th Amendment immunity also extends to Deputy Sheriffs because of their traditional function under Alabama law as the Sheriff's alter ego." Carr, 916 F.2d at 1527. Because the Defendants, are state officials, they are shielded from liability under the 11th Amendment of the United States Constitution.

The 11th Circuit has held that "Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1429 (C.A.11 (Ala.) 1997). The court explained that "under Alabama law

11

jailers carry out the sheriff's duty to maintain 'legal custody and charge of the jail in his county and all prisoners committed thereto'." Id. (citing ALA. CODE § 14-6-1 (1975)).  Because the individual defendants are State Officials, they are immune from suit under the 11th Amendment to the U.S. Constitution.

      c.      Immunity Under Article 1 § 14 of the Alabama Constitution of 1901

"When Article 1, § 14 Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed." Sholas Community College v. Colagross, 674 So.2d 1311 (Ala. Civ. App. 1995).  The Alabama Constitution mandates that "the State and its agencies have absolute immunity from suit in any court." Id. (citing Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989)).  State officers "in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." Colagross, 674 So.2d at 1313 to 1314 (citing Phillips v. Thomas, 555 So.2d at 83).  The 11th Circuit has agreed with the Alabama Supreme Court that "a suit brought against a Sheriff or a Deputy Sheriff in his individual capacity alleging negligence in the performance of his statutory duties should be treated as a suit against the state." Lancaster v. Monroe County Ala., 116 F.3d 1419, 1431 (11th Cir. 1997).  The 11th Circuit went on to hold that those claims against a Sheriff and Deputy Sheriff were "barred by Alabama's absolute sovereign immunity." Id.  Furthermore, the court noted that "given our holding that jailers are entitled to Eleventh Amendment immunity for official capacity claims, we find no reasonable basis for distinguishing claims against the jailers from claims against the sheriff." Id. at 1431.  The 11th Circuit has explicitly held that "under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." McMillian v. Johnson, 101 F.3d 1363 (11th Circuit 1996).  See also, Tinney v. Shores, 77 F.3d 378 (11th Cir. 1996).  Because

the action against Sheriff Fulmer, Warden Lockhart and Sgt. Bone is an action against the state, summary judgment is due to be granted to them with respect to any state law claims pursuant to Article 1, § 14 of the Alabama Constitution of 1901.

        d.        Substantive Immunity

The Alabama Supreme Court has held that the "doctrine of substantive immunity may yet be invoked if the official or employee (1) is engaged in the exercise of a discretionary function; (2) is privileged and does not exceed or abuse the privilege; or (3) is not negligent in his responsibility." DeStafney v. University of Alabama, 413 So.2d 391 (Alabama 1981). The Alabama Supreme Court has further noted that state officers or employees are entitled to substantive immunity "if they were engaged in the exercise of a discretionary function." Nance by and through Nance v. Matthews, 622 So.2d 297 (Ala. 1993). The Court noted that Black's Law Dictionary defines discretionary acts as "those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion…one which requires exercise in judgment and choice and involves what is just and proper under the circumstances." Id. (citing Black's Law Dictionary 419 (5th Ed. 1979)). Defendants acted within their discretion when providing medical attention to Plaintiff.

        e.        Statutory Immunity

Under Alabama statutory law "every peace officer, … whether appointed or employed as such peace officer by the state or county or municipality thereof… shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement." Alabama Code § 6-5-338 (a)(1975).

13

The Alabama Supreme Court has said that "[t]his section extends discretionary function immunity to municipal police officers…unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." Couch v. City of Sheffield, 708 So.2d 144, 153 (Ala. 1998). Because Defendants are State Officers have in their discretionary judgment, maintained the jail within constitutional limits, they are immune from any state law claims.

  f. Official Capacity Immunity

The United States Supreme Court has held that "a state is not a person within the meaning of § 1983." Will v. Michigan Depart. Of State Police, 491 U.S. 58 (1989). The Court has further held that "§ 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." Id. The court went on to note that "suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the officials office." Id. The Court, therefore, held that "neither a state nor its officials acting in their official capacities are persons under § 1983." Id. Because Defendants, Sheriff Fulmer, Warden Lockhart and Sgt. Bone are State Officials acting in their official capacities, they are not subject to liability pursuant to § 1983.

  g. Legislative Immunity

With respect to prisons, Counties are only responsible for funding and providing facilities. Turquitt, 137 F.3d at 1289. The 11th Circuit has held, "County Commissioners can be entitled to legislative immunity when acting in their legislative capacities." Woods v. Gamel, 132 F.3d 1417, 1420 (11th Cir. 1998). In Woods, the Plaintiffs sued under § 1983 for poor jail conditions and claims against the Commissioners because of their responsibility to pass a budget

14

for County expenses.  <u>Woods</u>, 132 F.3d at 1419.  The 11th Circuit held that "the budgetary decisions made by Defendants for funding the County-including the jail-are legislative acts protected by legislative immunity."  <u>Woods</u>, 132 F.3d at 420. Because the only duties of the County with respect to the jail involve funding, those duties are acts for which they are entitled to absolute legislative immunity.

There was no deliberate indifference by the Defendants. The individual defendants are State Officials acting in good faith and are immune from suit under the 11th Amendment of the U.S. Constitution, Article I, § 14 of the Alabama Constitution of 1901 and in accordance with the doctrine of good faith immunity.

VIII.   Motion for Summary Judgment

The Defendants respectfully request this Honorable Court to treat their Special Report as a Motion for Summary Judgment and grant the same unto them.


/s/ C. Winston Sheehan, Jr.
C. WINSTON SHEEHAN, JR.
Attorney for the Defendants


OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
Phone:  (334) 387-7680
Fax:     (334) 387-3222

CERTIFICATE OF SERVICE

  I hereby certify that on May 5, 2006, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered persons and that those persons not registered with the CM/ECF system were served by U.S. mail:

Don Michael Skelton
#194433   7B-28T
Ventress Corr. Facility
PO Box 767
Clayton, AL 36016

             /s/ C. Winston Sheehan, Jr.
             OF COUNSEL