IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

DON MICHAEL SKELTON,                        *
                    Plaintiff,

                                            * 7006 JUN -9  A 9:59

        vs.                                        CASE NO. 2:06cv-195-WKW

                                            *
BILLY WAYNE FULMER,
                    Defendant.              *

                                            *

                                            *

RESPONSE TO THE DEFENDANTS' SPECIAL REPORT.

        Comes now the plaintiff, Don Michael Skelton, pro-se in the above styled

cause and respectfully makes this his response to the defendants' Special

Report submitted on May 5, 2006, and in doing such states the following:

I.                ERRONEOUS FACTS AND INFORMATION.

        Plaintiff avers that the defendants' Special Report contains inaccurate

facts and information in regards to the following:

(a)  The Special Report at III "Plaintiff's Allegations...."

        The defendants make no mention of Skelton's allegation of contracting a

skin disease/disorder that he termed as a **"a very bad skin disease..."**, and

that he suffered from it while at Chilton County Jail, which continues to this

day, and still being treated for it by the health provider for the A.D.O.C.,

Prison Health Services Inc.

        The defendants do not mention in the "report" at III that Skelton complained

of the clothes given him that were not clean after they came back from the

laundry. **See:(Doc.No. 14 @ page 2 of amended complaint.), and(Skelton's Affidavit**

**attached.)**

(b)  Further, Defendants' Special Report at IV "Facts" page 3, states that **inter-**

**alia,** that Skelton filed only 2 formal grievances which pertained to the inmate

commissary and his account, this is not true. Skelton filed complaints pertaining

to him having to wear his uniform 24 hours a day, that he had no underwear, to

-wear while the clothes were being washed, that he had to sleep in the same
uniform 7 days a week and that while the clothes were being washed he had to
put on a sheet, which was not yet washed otherwise be naked.

The defendants have not provided this court with the other grievances he filed,
nor with his medical records concerning his skin problem. Skelton did not have
this problem when he entered the Chilton County Jail. The medical records would
show that he was treated with steroids and a topical ointment, and this treatment
continues to this day by the health provider at Ventress Correctional Facility.
The fact that Skelton did not have any skin problems can be shown by the jail's
**"Medical Screening Form"dated April 17, 29, 2004,** and Skelton never left the jail
until he was transfered to the A.D.O.C. in 2006.

(c)     Defendants' report states under **"Facts" @ page 4, para. 2,** that "Sgt.
Boone discovered that plaintiff was rolling-up hygiene kits in the laundry and
distributing them for barter." Plaintiff alleged that he had permission to get
2 hygiene kits for inmates who asked Officer Clecker for them as they were to
take a shower, and that he could get them, of course, rolling them up in their
uniforms which had just been washed. Plaintiff asserts that the conjecture
that Officer Clecker **"ordered plaintiff to steal the hygiene kits"** is absolutely
ridiculous, an officer would never make a statement like that, and this infor-
mation can only be seen as an excuse to deny Skelton "work-release status", and
more likely than not to punish him for filing his grievances.

(d)     Defendants' special report at IV, **"Facts" page 4, para.4** alludes that
Shane Lockhart investigated the foregoing incident of Plaintiff "stealing" the
hygiene kits, and that Mrs. Haygood's statement made that he would be on work-
release status, was false. Skelton avers that Mrs. Haygood did make such a
statement prior to him being accused of stealing the hygiene kits. As far as
Officer Click verifying that he gave Skelton permission to get the kits, Officer
Clecker, more likely than not, denied he gave said permission, because there were
no request slips filled-out by the inamtes, it was an impromtu situation at the

-2-

—moment made by Officer Clecker to have the inmates shower with soap. **See:**
**(Affidavit of Skelton**                    concerning Mrs. Haygood's work-release
**statement.).**

(e)    Defendants' report states at **IV, "Facts" page 4-5, para. 5** that "inmates
are assigned one uniform and that it is washed once a week. While the uniform is
being washed the inmate is required to be in his cell <u>in his underwear</u> until the
uniform is washed and dried." Skelton avers that this is an untrue statement, for
the **Property Sheets** submitted as evidence show that the underwear is **confiscated**
**upon admittance,** and that none are issued as a replacement, this is a policy or
custom of the Chilton Copunty Jail, and applies to all inmates admitted. The
inmates including Skelton are required to wrap a sheet that has not been washed
for a week or longer, and very possibly been in contact with the floor if he had
to sleep on the floor, around himself or go naked for 8 to 14 hours until the
uniform is returned, and most of the time it is damp or wet. **See: (Affidavits**
**of Skelton;       Patterson; and Campbell.)**

(f)    Defendants' report state at **IV, "Facts" page 5, para. 6** that there have
been times when the jail has been in excess of its capacity, and that mattress,
blankets, and sheets are provided for those to sleep on the floor. Skelton asserts
that in the time he was housed at the jail it was always in excess of capacity,
most of the time double its capacity with 4 men in a cell. **See: (Affidavits of**
**Skelton; Campbell;       and Patterson.)**

(g)    Defendants' report states at **IV, "Facts" page 6, para. 1, and 2** that
inmates are allowed outside upon availaiility of staff, and weather conditions.
Skelton asserts that he was <u>allowed out for recreation purposes only 1 time A MONTH</u>
during the time he was in the jail. However, he and all the inmates in the jail
were allowed out doors when toxic fumes were present in the pods from a chemical
being poured in the shower drains, and the fire department had to be called to
place fans in the pods to get the fumes out. Skelton avers that these are the
onlt times he was outdoors in all the time he was in the jail. Skelton also
asserts that the plastic spoon and cup every inmate had including his was —

-3-

-never sterilized by the kitchen or by the individual inmate because the water in the cells never got that hot, even in the showers, for everyone had to shower in cold water most of the time because it was said that the hot water heater was broken. See; (Affidavits of Skelton; Patterson; Hodge; and Campbell.)

Plaintiff avers that by the foregoing facts and exhibits provided he has shown the court cognizable claims that violate the Fifth; Sixth; Eighth; and Fourteenth Amendments to the United States Constitution, and at the minimum a evidentiary hearing should be held where he can present further evidence and material facts to warrant judgment in his favor or a jury trial as this court sees appropriate.

Further, it is plaintiff's belief that "qualified immunity" does not shield the defendants from the conditions of confinement while I was at the Chilton County Jail, my claims could be found by a jury to be a violation of clearly established constitutional rights, of which a reasonable person should have known. See: Harlow . Fitzgerald, 457 U.S. 800, 818, 102 S Ct. 2727, 2728, 457 L Ed.2d 396 (1982).

Also, should plaintiff be able to prove that the defendants' caused a violation of his constitutional rights through its adoption of an official policy, practice or custom, then qualified immunity is not a sheild to protect them from being liable for damages. See; Buckner v. Toro, 116 F.3d 450, 452-53 (11th Cir. 1997); Ort v. Pinchback, 786 F. 2d 1105, 1107 (11th Cir. 1986); and Edwards v. Ala. Dept. of Corr., 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000).

The defendants may be liable if they had knowledge of the rash or skin disorder and acted intentionally or recklessly to delay treating the cause, which in this case more likely than not was the industrial detergent used to wash the uniforms, and letting them be dried thoroughly as the Center for Disease Control in Atlanta has expounded over the last several years concerning the increase outbreak of Staphlococcus infections in prison, and locker rooms across the country.

In this action the plaintiff has alleged several constitutional violations committed against him by the defendants, while he was in the Chilton County Jail. The defendants through counsel say they are immune from liability either through the Eleventh Amendment's absolute immunity provision and/or through the provisions of "qualified immunity". Plaintiff asserts that in some instances the defendants are liable under both.

In **McMillian v. Monroe County**, 520 U.S. 781, 795 (1997), the Supreme Court acknowledges that a sheriff may be a policymaker for certain purposes. For instance, as in this case Sheriff Fulmer may be immune in his official capacity, but he can be nonetheless sued in his individual capacity. **Scheur v. Rhodes**, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Therefore, Sheriff Fulmer is not entitled to assert absolute immunity of the Eleventh Amendement as a defense to actions against him in his individual capacity. **See generally, Kentucky v. Graham**, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985).

The constitutional violations alleged by plaintiff are the denial of being allowed to attend a law library to do research on his case and to properly file an action against the defendants. **See(attached exhibit "H' request slip.)** Also, plaintiff complained that the laundry was not using bleach to clean the uniforms, (plaintiff did not originally know about the "industrial detergent being used,) and that the uniforms were coming back wet or damp. Of course, these actions by the laundry in conjuction with having to wear the uniform 24 hours a day, while sleeping in them also, because of no underwear and that the temperature in the pods was always cold, more likely than not, caused the skin problems that have occurred to plaintiff and many other inmates in the jail. Warden, Shane Lockhart gave specific orders that no bleach was to be used in cleaning the sheets or uniforms of the inmates, it was to be used only for the kitchen. A reasonable person who has the position of authority such as Warden Lockhart should have realized that something was amiss after having so many complaints of skin problems in the jail. Warden Lockhart was deliberately indifferent to

-plaintiff's medical needs, or to provide a safe environement free from infectious disease, when he continued to follow the same policy/custom of cleaning the inmates' uniforms and sheets, never ascertaining whether or not that the detergent combined with the inmates not having any underwear under the uniform, and that they were being returned wet or damp to put on bare skin was the cause of the "skin problems". A reasonable Sheriff and Warden in the same circumstances as Fulmer and Lockhart and knowing what they knew or should have known could have concluded that their actions (custon/policy) did violate clearly established statutory or constitutional rights, those being to provide a safe and healthy environement for their charges, which also applies to clothing and cleanliness. See, <u>Anderson v. Creighton</u>, 483 U.S. 636, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987).

Plaintiff avers that Warden Lockhart may have been acting pursuant to Sheriff Fulmer's policy or custom, which does not negate his responsibility or culpability, for Sheriff Fulmer is given full authority in the running of the county jail by the County Commission, and where there is a deficient governmental custom or policy, and a link exists between that custom or policy, and a constitutional violation stemming from the implementation of the custom the injured party has a cause of action against the individual implementing the policy as well as against the government entity. See, <u>Fundiller v. City of Cooper</u>, 777 F.2d 1436 (11th Cir. 1985).

Custom which has not received official approval may also provide a basis for imposing liability on a municipality or local governing body, **"providing that the custom is permanent and well settled"**. See, <u>Monell v. Department of Social Services,</u> 436 U.S. 658, 691 (1978)(citations omitted). There must be a causal connection between the county's responsibilities and plaintiff's injuries.

-An act can satisfy the causation requirement of §1983 when it involves official policy as the moving force of the constitutional violation. <u>Id</u>. <u>Monell</u> 436 U.S. at 694.

Plaintiff avers that there can be no doubt that the confiscation of plaintiff's underwear upon arrival at the Chilton County Jail, and that the "jail" did not issue a replacement underwear, thus leaving plaintiff's body naked under the uniform is a settled custom or policy of the jail and has the "force and effect of law". Who exactly authorized this custom or policy has yet be determined. However, a question that needs to be addressed is to what purpose is the government's interest in implementing this custom or policy, is it other than to punish or deter? See, <u>Antonelli v. Sheehan</u>, 81 F.3d 1427 (7th Cir. 1996)(**The practice of depriving an inmate of his underwear, yet giving him a jumpsuit or uniform to wear only, can be deemed punitive in nature, especially if the deprivation is continued or for a lengthly period of time.**).

The overcrowded conditions of the jail goes without saying that it exceeded its capacity constantly, and not for just an emergency type situation, this too leads to environmental health hazards of an unconstitutional dimension. The defendants through counsel have stated that:**"the jail is also inspected by the State Department of Corrections..."**, to show that the jail is not in an unconstitutional operation. Plaintiff asserts that this is like **"putting the fox in charge of the henhouse"**, for it is common knowledge that the A.D.O.C. is under fire from the state and federal courts concerning the overcrowded conditions in that system.

Counsel for the defendants also states that there is no law library at the Chilton County Jail. Plaintiff asserts that **exhibit "H"** shows that the jail

-not having an officer available to take plaintiff to the law library. Obviously, somebody has their facts confused, however, the point is, plaintiff was denied access to the law library and the courts by not having a period of time allotted to him to research the law not only for his case, but also to file a proper complaint as to his grievances against the jail, with this court.

The Supreme Court in <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981), noted:

> "...that no 'static test' can be used by
> the courts to determine what types of
> conditions violate the Eighth Amendment
> but instead the courts must draw its
> meaning from the evolving standards of
> a maturing society."

<u>Id</u>. at 363, (quoting <u>Trop v Dulles</u>, 356 U.S. 86 (1958) (plurality opinion).

The Court then emphasized (1), the importance of using objective factors in making a determination of confinement that is **"sufficiently serious"**, and (2), a subjective component which requires a showing that the prison officials exhibited **"deliberate indifference"** to the inmate's health or safety. See, also, <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991), and <u>La Marca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993). Importantly, the Supreme Court also noted in <u>Hudson v. McMillan</u>, 503 U.S. 1,8 (1992)(citations omitted):

> "Extreme deprivations are required to make
> a condition of confinement claim. Because
> 'part of the penalty that criminal offenders
> pay for their offenses against society, and
> only those deprivations denying the minimal
> civilized measures of life's necessities are
> sufficiently grave to form the basis of an
> Eighth Amendment violation.'"

Therefore, the objective component of an Eighth Amendment claim is contexual and responsive to comtemporary standards of decency. <u>Hudson</u>, at 10. (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Plaintiff avers that he has shown this court in the foregoing reply, and by affidavits, including his own, plus documents as evidence of material facts, that the violations he suffered in the jail are **"sufficiently serious"** and grave to form the basis of an Eighth Amendment violation.

Plaintiff avers that the violations alleged by him in this action, taken in their totality, do show that the defendants have acted in a manner that demonstrates "deliberate indifference" towards providing him with a meaningful healthy and safe environment. Plaintiff has submitted documents that show that the Chilton County Jail does have a policy or custom of confiscating an inmate's underwear, and that he is not given a replacement to wear under the jail uniform, and this policy/custom can be deemed punitive. See, O'leary v. Iowa State Men's Reformatory, 79 F.3d 82 (8th Cir. 1996). This practice of confiscating the underwear upon admittance to jail undoubtly has been the initial cause of the "skin problems" suffered not only by plaintiff, but many of the other inmates also. The problem was then compounded by washing in an industrial detergent and not drying the uniforms or sheets, returning them wet or damp. Contributing to these factors is that the plaintiff had to wear the uniform 24 hours a day, the same uniform!

Wherefore, plaintiff contends that he has established an affirmative causal connection between his alleged violations, and the acts (policy/custom) or omissions of the defendants, and he has given evidence that supports his allegations of the constitutional violations in this reply to the defendants "special report". See, Jones v. Preuit, v. Mauldin, 851 F.2d 1321 (11th Cir. 1988).

Plaintiff would now move this Honorable Court for an evidentiary hearing, whereby after further discovery by him, pursuant to interrogatories; admissions; and production of documents, he will show the court that this case warrants a jury trial, or whatever this court deems appropriate in conformance with the law.

the 8th day of June ,2006.

Respectfully submitted, on this

Don Michael Skelton, #194433
Ventress Correctional Facility
P.O. Box 767
Clayton, Al. 36016-0767

—9—

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing response with exhibits and affidavits attached to counsel for the defendants by placing same in the U.S. Mail, postage prepaid, First Class Mail, on this the ___ day of ___,2006, and properly addressed as follows:

Hon. C. Winston Sheehan,Jr.
Attorney for the Defendants
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Al. 36102-2148

Don Michael Skelton, #194433
Ventress Correctional Facility
P.O. Box 767
Clayton, Al. 36016-0767